UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDREHA U.,[1] <br><br>                 Petitioner, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>               Respondent. | Case No. 1:21-CV-00302-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Petitioner brought this matter for judicial review of Respondent's denial of her application for benefits under Title II and Title XVI of the Social Security Act for a period of disability beginning April 1, 2019. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will reverse and remand the decision of the Commissioner for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**MEMORANDUM DECISION AND ORDER  - 1**

## BACKGROUND

On August 12, 2019, Petitioner protectively filed an application for disability

insurance benefits and supplemental security income under Titles II and XVI of the

Social Security Act. (AR 20.) She alleged a disability onset date of April 1, 2019, due to

physical and mental impairments, including aneurysm, chronic migraines, attention

deficit disorder, panic attacks, loss of left peripheral vision, anxiety, depression,

insomnia, short term memory loss, and diplopia. (AR 324.) Petitioner's application was

denied upon initial review and on reconsideration. (AR 19.)

A hearing before Administrative Law Judge (ALJ) Wynn O'Brien-Persons took

place via telephone on December 15, 2020, at which the ALJ heard testimony from

Petitioner and a vocational expert. (AR 19.) On February 17, 2021, the ALJ issued a

written decision finding Petitioner was not under a disability from April 1, 2019, through

the date of the written decision, and therefore found Petitioner is not disabled. (AR 33.)

The ALJ found Petitioner suffers from the severe impairments of status post

aneurysm surgeries, migraines, attention deficit disorder, cognitive impairment due to

brain trauma including major depressive disorder and anxiety, insomnia, loss of left

peripheral vision, diplopia, and status post ACL/Meniscus surgery. (AR 22.)

The ALJ next determined Petitioner retained the residual functional capacity

("RFC") to perform a full range of work at all exertional levels, but with the following

nonexertional limitations:

> She should avoid concentrated exposure to noise. She can
> perform simple, routine, 1-2 step tasks. She would be off task
> for approximately 5% of an 8 hour workday. She can tolerate

**MEMORANDUM DECISION AND ORDER - 2**

occasional changes in the work setting. She can occasionally climb ladders, ropes, or scaffolds. She can frequently kneel and crouch. She would need to wear sunglasses in environments with fluorescent lighting. She should avoid moderate exposure to hazards. She cannot perform fast-paced production work.

(AR 24.) At step four,[1] the ALJ concluded Petitioner could not perform her past work as a phlebotomist, sales representative, or medical clerk. (AR 31.) The ALJ therefore proceeded to make findings at step five, concluding Petitioner retained the RFC to perform other jobs that exist in significant numbers in the national economy, such as marker, sorter, and checker. (AR 32.)

Petitioner timely requested review by the Appeals Council, which denied her request on June 23, 2021. (AR 1-6.) She timely appealed this final decision to the Court on July 21, 2021. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of Petitioner's disability onset date of April 1, 2019, Petitioner was thirty-five years of age, which is defined as a younger individual. 20 C.F.R. § 404.1563. (AR 32.) She has at least a high school education,[2] and her past work was semi-skilled at

---

[1] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five- step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. See 20 C.F.R. § 416.920(a)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. See id. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. See id. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. See id. § 416.920(a)(4)(iv)-(v).").

[2] Petitioner completed her bachelor's degree in sports medicine before suffering a ruptured cerebral aneurysm that required a coil embolization of the anterior communicating artery in July of 2012. (AR 786.) The aneurysm recurred and required a second coiling procedure in 2015. (AR 789, 794.)

the sedentary to light exertional levels. (AR 31.)

## ISSUES FOR REVIEW

1.    Whether the ALJ erred in evaluating Petitioner's migraine headaches against Listing 11.02 – Epilepsy?

2.    Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony concerning her impairments?

3.    Whether the ALJ's failure to consider lay witness statements constitutes harmless error?

4.    Whether the ALJ properly evaluated the medical opinions?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision, unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

**MEMORANDUM DECISION AND ORDER  - 4**

1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

Petitioner challenges the ALJ's step three findings concerning Listing 11.02, as well as the ALJ's step four and five findings regarding Petitioner's residual functional capacity ("RFC") and her ability to sustain full-time work. The Court finds Petitioner's arguments persuasive, as explained below.

## DISCUSSION

**1.     The ALJ Erred in Evaluating Petitioner's Migraine Headaches at Step Three of the Sequential Process**

### A.     Legal Standard

At step three, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three [of the sequential process], and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). "To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment most like the claimant's impairment." *Tackett*, 180 F.3d at 1099 (cleaned up); *see also* 20 C.F.R. § 404.1526.

**MEMORANDUM DECISION AND ORDER - 5**

Notably, migraine headaches are not a specifically-listed impairment. If an impairment is not described in the "Listing of Impairments," the regulations require that the ALJ "compare [a claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 416.926(b)(2). The Social Security Administration identifies Listing 11.02 (Epilepsy) as the most closely analogous to primary headache disorders. Migraine headaches are included in these disorders and may, alone or in combination with another impairment, medically equal a recognized Listing. SSR 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, *available at* 2019 WL 4169635 (Aug. 26, 2019); *see also Woolf v. Saul*, 2019 WL 4580037, at *5 (D. Idaho 2019) (citing *Rader v. Comm'r of Soc. Sec*., 2018 WL 4087988, at *3-4 (D. Idaho 2018)) ("Thus, the SSA provides specific guidance regarding the applicability of Listing 11.02 to the step three medical equivalence analysis for migraine headaches. Given this, it is no surprise that an ALJ's failure to specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches were found to be a severe impairment at step two.").

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment most like the claimant's impairment." *Id*. (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)).

**MEMORANDUM DECISION AND ORDER - 6**

A claimant bears the burden of producing evidence that establishes all of the requisite medical findings that her impairments meet or equal a particular Listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant is alleging equivalency to a Listing, she must proffer a theory, plausible or otherwise, as to how his combined impairments equal a Listing. *Lewis*, 236 F.3d at 514. Although it is the claimant's burden at step three, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id*. at 512. However, the ALJ is not required to state why a claimant fails to satisfy each criteria of the Listing if the ALJ adequately summarizes and evaluates the evidence. *Id.*

## B.    Analysis

Here, the ALJ found Petitioner's migraine headaches constituted a medically determinable, severe impairment at step two. (Dkt. 22.) At step three, the ALJ mentioned Petitioner's migraine headaches and aneurysm condition, referencing Listing 11.00 and 11.01, and SSR 19-4p, which is the Agency's policy interpretation ruling for how to evaluate cases involving primary headache disorders. The ALJ determined Petitioner's "condition does not meet the listing for that body system." (AR 23.)

Petitioner argues that the ALJ erred at step three when the ALJ "failed to consider" whether Petitioner's migraine headaches equaled Listing 11.02. Pet.'s Brief at 5 (Dkt. 10). Petitioner contends that her migraine headaches medically equal Listing 11.02B. Pet.'s Brief at 6. (Dkt. 10.) There is no dispute that the ALJ considered Petitioner's migraine headaches within the broader context of Listing 11.00, and with

reference to SSR 19-4p. (AR 23.) The appropriate question, therefore, is whether the ALJ sufficiently considered the applicable listing. The Court finds that the ALJ did not do so.

Listing 11.02B requires evidence of dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02B. Here, the ALJ referenced Listing 11.00 and 11.01, and concluded that, after reviewing the medical evidence, "the claimant's condition does not meet the listing for that body system." (AR 23.) But Listing 11.00 and 11.01 are generic categories pertaining to a number of different neurological disorders.

Upon finding that Petitioner's headache disorder constituted a severe impairment, and referencing SSR 19-4p, it was incumbent upon the ALJ to engage in some evaluation of Petitioner's migraines with reference to the specifically applicable listing in making the step three determination. *James F. v. Saul*, No. 1:19-CV-00486-CWD, 2021 WL 816729, at *4 (D. Idaho Mar. 3, 2021). Yet, the ALJ provided no explanation as to how she arrived at her conclusion, nor did the ALJ explain what medical evidence supported it. In contrast, the ALJ considered Petitioner's traumatic brain injury with reference to Listing 11.18. (AR 23.) By failing to provide any discussion of whether Petitioner's migraine headaches met or equaled a specific listed impairment after finding Petitioner's migraines constituted a severe impairment, the ALJ committed legal error. *See e.g., Woolf*, 2019 WL 4580037, at *5; *Rader*, 2018 WL 4087988 at *4; *Williams v. Berryhill*, No. 2:16-cv-1026, 2018 WL 2234902 at *3 (D. Utah May 16, 2018).

Respondent argues that the ALJ's analysis elsewhere in the written decision provides sufficient rationale for the Court to determine the ALJ's basis for her step three

finding, citing *Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990). Respondent references the ALJ's evaluation of Petitioner's subjective symptom testimony, where the ALJ discredits Petitioner's testimony about the severity and frequency of her headaches. (AR 27, 30.) However, the ALJ's evaluation of Petitioner's symptom statements does not satisfy the step three requirement that the ALJ conduct an assessment of whether the relevant evidence of migraines met or equaled a listed impairment. *Lewis*, 236 F.3d at 512 ("[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so.").

Further, Respondent's reliance upon *Gonzalez* fails on the record before the Court. In *Gonzalez*, the court noted that the ALJ made a summary of the record, and that this summary was adequate to determine the "foundation[] on which the ultimate factual conclusions are based." 914 F.2d at 1201. Thus, the court held that the ALJ in *Gonzalez* did not need to make findings regarding every different section of the listing of impairments. *Id.*

Here, in contrast, the Court is unable to discern what evidence supports the ALJ's finding that Petitioner did not satisfy the criteria of Listing 11.02B. Rather, the evidence the ALJ refers to notes that, in April of 2020, Petitioner was having up to three headaches per week with photophobia and double vision, and that her headaches could last for a few hours up to several days. (AR 27.) In September of 2020, Petitioner reported having headaches as frequently as fifteen days each month. (AR 27.) The ALJ apparently relied upon one notation in the medical record where Petitioner reported Aimovig injections

reduced the frequency of her headaches to one every two or three weeks. (AR 27.)

However, the ALJ failed to discuss other evidence in the record indicating that Petitioner had been on Medicaid since January 1, 2020, and that Medicaid had denied authorization for her Aimovig monthly injection for treatment of her migraines. (AR 382.) Petitioner's medical records indicate her migraines became more frequent after January 1, 2020. (AR 377.) Further, she testified at the October 15, 2020 hearing that, at that time, she suffered a migraine, on average, eight to twelve times each month. (AR 54.) Nor did the ALJ discuss Petitioner's associated migraine symptoms, which included photophobia, double vision, and vomiting. (AR 669.) On this record, the Court cannot confidently conclude that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Williams v. Berryhill*, No. 2:16–cv–1026 BCW, 2018 WL 2234902 at *3 (D. Utah May 16, 2018) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Respondent relies also upon *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020), contending that Petitioner failed to articulate how her migraines were "medically equivalent" to Listing 11.02 during the proceedings before the ALJ. Respondent's reliance upon *Ford* is misplaced as well. There, the claimant argued that the ALJ erred by failing to consider whether a combination of her impairments "medically equaled" the criteria of Listings 1.02 (Major dysfunction of a joint) or 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). The court held that, because the claimant made only a passing reference to a "combination of impairments" at the hearing before the ALJ, and did not argue or explain how such a combination was medically

MEMORANDUM DECISION AND ORDER  - 10

equal to either listing, the ALJ had no obligation to discuss medical equivalency *sua sponte*. 950 F.3d at 1157. Here, in contrast, Petitioner did not make a medical equivalence argument. She contends her headaches, standing alone, meet the criteria of Listing 11.02B. Further, policy guidance explicitly requires the ALJ to consider primary headache disorder under Listing 11.02. SSR 19-4p. The Court finds *Ford* is neither analogous nor persuasive.

And finally, Respondent's post hoc rationalizations, intended to establish that Petitioner cannot show that her migraines satisfy the requirements of SSR 19-4p for finding medical equivalency, are improper. The Court is constrained to review only the reasons asserted in the ALJ's written decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Here, the ALJ failed to discuss Petitioner's migraine headaches in relation to Listing 11.02B, and instead made a conclusory statement without any discussion of the evidence in the record that supported the statement. Further, as discussed above, the Court cannot discern the ALJ's reasoning with reference to other sections of the written decision.[3] It is not for the Court to intuit the ALJ's rational with regard to Petitioner's migraines at step three; further, Respondent's post hoc arguments referencing the ALJ's discussion of Petitioner's subjective symptom testimony are insufficient. *James F. v. Saul*, No. 1:19-CV-00486-CWD, 2021 WL

---

[3] The ALJ's evaluation of Petitioner's subjective symptom testimony is also without support by substantial evidence in the record, as explained in the following section.

MEMORANDUM DECISION AND ORDER - 11

816729, at *5 (D. Idaho Mar. 3, 2021).

The Court rejects Respondent's contention that the ALJ's findings concerning Petitioner's subjective symptom testimony is sufficient to uphold the ALJ's step three determination. Resp. Brief at 8. (Dkt. 14.) The ALJ's evaluation of Petitioner's symptom statements does not satisfy the step three requirement that the ALJ conduct some assessment of whether the relevant evidence of migraines met or equaled a listed impairment. *Lewis*, 236 F.3d at 512 ("[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so.").

The ALJ's decision contained no discussion or evaluation of the evidence relevant to the step three listings equivalency assessment as it relates to migraines. Despite finding Petitioner's migraines a severe impairment, the ALJ made no factual findings supporting the conclusory statement that Petitioner's "condition" did not meet Listings 11.00 or 11.01. Likewise, the ALJ's discussion of Petitioner's symptom statements as they relate to migraines is lacking any analysis of whether that evidence met or equaled a listed impairment. (AR 27, 30.)

Based on the foregoing, the Court concludes that the ALJ erred by failing to meaningfully discuss the evidence related to Petitioner's migraine headaches at step three of the sequential evaluation process. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (An ALJ's error is harmless only if it is inconsequential to the ALJ's ultimate nondisability determination or if, despite any legal error, "the agency's path may

**MEMORANDUM DECISION AND ORDER - 12**

reasonably be discerned."). Failure to fully consider Petitioner's migraines at step three was not inconsequential to the ultimate nondisability determination and, consequently, not harmless. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Lewis*, 236 F.3d at 512 (citing 20 C.F.R. § 404.1520(d)). Because the Secretary is in a better position to evaluate the evidence and properly consider step three equivalence, remand on this issue is warranted to allow the ALJ to make the necessary findings and listings determination in the first instance. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

Although remand is warranted with respect to the ALJ's step three finding without further discussing Petitioner's remaining challenges on appeal, s*ee Marcia v. Sullivan*, 900 F.2d 172, 176-177 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised"), the step three evaluation of whether Petitioner's migraines medically equal Listing 11.02B is dependent on the ALJ's proper evaluation of the relevant medical evidence, opinion testimony, and Petitioner's subjective symptom statements, *James F. v. Saul*, No. 1:19-CV-00486-CWD, 2021 WL 816729, at *6 (D. Idaho Mar. 3, 2021). Accordingly, the Court will address Petitioner's challenges to the ALJ's evaluation of Petitioner's symptom statements and lay witness testimony as they relate to Petitioner's migraine headaches.[4]

---

[4] The Court declines, however, to address Petitioner's challenge to the ALJ's evaluation of the medical opinions. The medical opinions relate to Petitioner's cognitive impairments affecting her memory, and symptoms related to major depressive disorder and anxiety. Pet. Brief at 12 – 16. (Dkt. 10.) The Court does not find this challenge pertinent to the ALJ's step three finding regarding Petitioner's migraine headaches.

2.      **Subjective Symptom Testimony**

The ALJ considered Petitioner's subjective symptom testimony concerning her

migraine headaches,[5] finding her testimony did not substantiate her allegations of

disabling limitations related to them. The ALJ concluded that, although Petitioner's

medically determinable impairments could reasonably be expected to cause her alleged

symptoms, her statements concerning the intensity, persistence, and limiting effects of

these symptoms were not entirely consistent with the medical and other evidence in the

record. (AR 26.)

In reaching this conclusion, the ALJ noted that Petitioner's headaches were

"mostly based on the claimant's self-reports of symptoms," which he found unreliable.

(AR 30.) The ALJ contrasted Petitioner's allegations of frequent headaches with "some

records" noting that she reported having a migraine headache every two to three weeks.

(AR 30.) The ALJ also noted that injections for Petitioner's headaches reportedly reduced

their frequency. (AR 30.) Finally, the ALJ referenced Petitioner's daily activities as

grounds to find her testimony less than fully persuasive, citing her ability to walk up to

four miles and to play Frisbee golf. (AR 30.)

Petitioner contends the record as a whole does not support the ALJ's conclusion

that Petitioner's headaches improved with treatment. She also argues the ALJ failed to

analyze Petitioner's activities in context with Petitioner's testimony as a whole.

Respondent counters that the ALJ's determination is supported by the record,

given Petitioner's daily activities contrasted with her symptom complaints. Respondent

_____

[5] The Court limits its discussion of Petitioner's symptom testimony to her headaches, as that testimony is most relevant to the ALJ's step three finding.

**MEMORANDUM DECISION AND ORDER - 14**

contends also that the record supports the ALJ's finding that Petitioner's headache symptoms improved with treatment, and that her testimony regarding the frequency of her headaches contrasts with inconsistent symptom reporting found within the record. Resp.'s Brief at 4 – 5. (Dkt. 14.) Finally, Respondent notes that the ALJ relied upon Petitioner's testimony that she worked after suffering an aneurism in 2012 as evidence undermining Petitioner's subjective symptom testimony. Resp.'s Brief at 5. (Dkt. 14.)

### A.    Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her

**MEMORANDUM DECISION AND ORDER  - 15**

symptoms only by offering specific, clear and convincing reasons[6] for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[7] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical

---

[6] Respondent claims that the clear and convincing standard conflicts with the Social Security Act and its implementing regulations. Resp.'s Brief at 2 n.2. (Dkt. 14.) However, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id*. at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This allows the Court to meaningfully review the ALJ's decision. *Id*. In turn, the reasons for rejecting a claimant's testimony about her symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons and determine whether the evidence is sufficient to support them.

[7] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

MEMORANDUM DECISION AND ORDER  - 16

sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### B.      Petitioner's Subjective Complaints

Petitioner completed a headache questionnaire and a function report on October 7, 2019. (AR 352, 354.) She indicated her headaches first began in June of 2012,[8] and that headache symptoms included pain, blurred or double vision, lightheadedness, nausea, vomiting, and occasionally diarrhea. (AR 352, 354.) She indicated that her headaches occurred three to four times each week. (AR 352.) She had begun treatment

---

[8] In July of 2012, Petitioner suffered a ruptured cerebral aneurysm requiring a coil embolization of an anterior communicating artery. (AR 784, 786.) She had a history of seizures that occurred several weeks' antecedent to the aneurysmal subarachnoid hemorrhage, but none following. (AR 786.) On June 17, 2015, an MRA of the head and an MRI of the brain demonstrated probable recurrence of the anterior communicating artery aneurysm as well as resection of the right occipital lobe in the region of Petitioner's previous AVM. (AR 786.) Petitioner underwent a coil embolization of the anterior communicating artery aneurysm on July 2, 2015. (AR 784.)

with Aimovig injections once every thirty days, and indicated that her headaches were "less severe" for about three weeks after the injection, but that a typical headache lasted eight to twelve hours. When suffering from a headache, she reported being unable to do anything, and that following a headache, she felt "spacey, shaky, and weak." (AR 352.) She described a typical day consisted of caring for her dog, personal care, watching television, doing chores such as cleaning, laundry, watering the plants, and ironing. (AR 352 – 356.) Reading for too long triggered migraines. (AR 358.)

Petitioner completed a second headache questionnaire dated February 6, 2020. (AR 374.) Similar to her answers to the first questionnaire, Petitioner reported that her headache symptoms included pain, nausea, vomiting, and blurred or double vision. (AR 374.) She indicated that her headaches occurred three to four times each week. (AR 374.) By this time, she was no longer being treated with monthly Aimovig injections,[9] because her treating physician was not able to continue providing free samples, and Petitioner could not afford the $500 monthly cost. (AR 374.) She stated that, while the Aimovig did not stop her headaches, it made them less severe. (AR 374.) Her statements concerning how long her headaches last, and the effects upon her physical abilities during and after headaches, were the same as in her prior questionnaire. (AR 374.)

At the December 15, 2020 hearing, Petitioner testified she experiences a migraine eight to twelve times each month, and that symptoms last anywhere from eight hours to three days. (AR 54.) She described symptoms of pain, vomiting, diarrhea, and impaired

---

[9] She received monthly injections May – December of 2019. (AR 374.) She was able to obtain insurance coverage through Medicaid on January 1, 2020, which denied authorization for Aimovig injections for treatment of her migraines. (AR 382.)

vision. (AR 53 – 54.)

Petitioner attempted to work after her 2012 brain surgery. (AR 48.) She attended paramedic school in the spring of 2017, but despite being provided with accommodations (including allowances for missing class), she was unable to pass the course and was terminated from the program. (AR 401, 48, 402 – 403.) She worked between June 4 and July 31 of 2018 as a phlebotomist. (AR 52, 62.) Due to mistakes on the job, she was placed in a receptionist position, and she was ultimately let go due to absenteeism related to her migraine headaches. (AR 53.) She was hired at Quest Diagnostics in June of 2019, but was let go after a 90-day probationary period. (AR 50, 556.) During her time at Quest Diagnostics, she missed work due to migraines. (AR 51.)

Medical records document Petitioner's migraine headache treatment and her subjective complaints regarding her migraine symptoms. On April 15, 2016, neurosurgeon Paul Montalbano, M.D., completed a consultation report. (AR 516.) He reported that Petitioner experienced daily headaches with associated nausea. (AR 516.) On April 10, 2017, Petitioner sought care from the emergency department for a headache, reporting that her pain was "8/10 in severity," worse with bright light and loud noise. (AR 450.) She reported having headaches two times per week. (AR 450.)

A December 3, 2018 treatment note recorded "worsening migraines the past 4 months. She is getting a migraine without aura 2-3x/week…nausea, no vomiting…photophonophobia. Throbbing pain." (AR 532.) On January 11, 2019, Petitioner's provider, neurosurgeon Ondrej Choutka, M.D., recorded that Petitioner "does not have any new symptoms…. She has not had any new headaches." (AR 510,

738.) Petitioner indicated on her intake form completed on January 11, 2019, that she suffered from headaches, migraines, blurred vision, and memory loss. (AR 514.)

During a consultative examination with Michael Emery, Ph.D., on December 3, 2019, Petitioner complained of migraine headaches, sometimes stimulated by fluorescent lights, sometimes without apparent cause, characterized by pain, nausea, and light sensitivity along with insomnia. (AR 615.)

Medical records dated April 8, 2020, document Petitioner reported migraine headaches "2-3 times/week. +photophobia and less so to sound. Will get double vision with Has.[10] Last for few hours to days…[Aimovig] injections…[s]paced her Has to every 2-3 weeks." (AR 669.)  On May 17, 2019, Petitioner's provider recorded that Petitioner was experiencing "worse" migraine headaches since taking birth control medication, and that they were reportedly occurring twice each week. (AR 527.) Petitioner's provider assessed "migraine without aura and without status migrainosus, not intractable." (AR 527.)

On May 27, 2020, Petitioner described her headaches to Ryan Smith, D.O. at St. Luke's Neurology Clinic as occurring in the right frontal, temporal and suboccipital lobes transitioning to holocephalic, characterized by sharp, stabbing, achy and throbbing pain with nausea and light sensitivity. (AR 728.) She indicated headaches occurred fifteen days per month, for greater than four hours. (AR 728.) Dr. Smith noted Petitioner's headaches appeared secondary to ASAH and possibly craniotomy. (AR 733.) He charted also that, "[s]he clearly has migraine features so will treat

_____

[10] In context, "Has" appears to be an abbreviation for "headaches."

**MEMORANDUM DECISION AND ORDER  - 20**

accordingly." (AR 733.)

On December 14, 2020, neurologist Michael Parker, M.D. treated Petitioner for headaches. (AR 701.) She had been prescribed several preventative medication trials, but reported no headache improvement with either atenolol, topiramate, or sumatriptan. (AR 720.) She reported experiencing headaches fifteen days each month. (AR 701.) Dr. Parker recorded that, on a prior course of Aimovig, this medication reduced headache intensity by about 50%, but he noted that insurance refused to cover this medication and that she had been provided samples only. (AR 701, 712.) The diagnosis at this visit was "chronic migraine with visual aura – likely secondary to ASAH and craniotomy." (AR 715.) Dr. Parker recommended treatment with Aimovig injections monthly. (AR 715.)

### C.    Analysis

The Court finds the ALJ erred in her evaluation of Petitioner's subjective symptom testimony. The ALJ discounted Petitioner's testimony because evidence related to her migraine headaches was based upon "self-reports of symptoms." (AR 30.) However, headache disorder is diagnosed primarily based upon an evaluation of a person's symptoms, and next by excluding alternative medical and psychiatric causes of those symptoms. SSR 19-4p. Here, the medical records indicate Petitioner's neurologist diagnosed migraine headaches, "secondary to ASAH and possibly craniotomy." (AR 733.) The description of Petitioner's headaches noted in the medical records is also consistent with Petitioner's testimony during the hearing before the ALJ.

Next, the ALJ rejected Petitioner's testimony on the grounds that it conflicted with the medical records. The ALJ noted that, while Petitioner reported "frequent"

headaches, "some records" reported she suffered from headaches every two to three weeks, and that injections "reduced their frequency." (AR 30.) Improvement with treatment is a factor the ALJ may consider. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the ... effectiveness or adverse side effects of any pain medication."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's testimony undermined by the fact he responded well to conservative treatment). Symptom improvement, however, should be considered within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

A review of the record as a whole reveals, however, that only one record, dated April 8, 2020, recorded that Aimovig injections spaced Petitioner's headaches to every 2-3 weeks. (AR 669.) Other than this one notation, Petitioner consistently reported frequent headaches, sometimes as many as twelve to fifteen each month. (AR 701, 715.) On January 20, 2020, after receiving Aimovig injections between May and December of 2019, Petitioner reported headaches occurring three to four times each week, and that injections reduced the headache severity but not their frequency. (AR 374.) No other record documents that Aimovig injections reduced the frequency of Petitioner's headaches. Other medical records indicate Petitioner could no longer obtain Aimovig injections due to denial of coverage by her insurer, and that the severity and frequency of Petitioner's headaches were not ameliorated by any other abortive medications. (AR 701.)

One record notation, which is inconsistent with the entirety of the record as a

whole, does not meet the substantial evidence standard, which requires "more than a scintilla" of evidence. *See Jones v. Comm'r of Soc. Sec*., No. 1:19-CV-00109-REB, 2020 WL 7029143, at *2 (D. Idaho Nov. 30, 2020) (discussing the substantial evidence standard); *c.f. Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting "many discrepancies between the record and [Claimant's] account of [her] conditions at the hearing."). Nor does the record as a whole substantiate "significant improvement" in Petitioner's headache condition with medication. *See Amy F. v. Comm'r, Soc. Sec. Admin*., No. 20-CV-01838-HZ, 2022 WL 2063991, at *4 (D. Or. June 6, 2022) (improvement with treatment can constitute a clear and convincing reason when supported by the record as a whole). Rather, other than the April 8, 2020 record note, Petitioner consistently reported that Aimovig injections reduced the severity, but not the frequency, of her headaches. (*See* AR 701.)

Even if the Court accepted the ALJ's proffered reason that Petitioner's headaches decreased in frequency with the administration of Aimovig injections, at a minimum Petitioner was still suffering a headache every "2 to 3 weeks," and symptoms lasted for a "few hours to a few days." (AR 27, 30.) Petitioner testified that symptoms included pain, photophobia, diarrhea, dizziness, double vision, and nausea, and that after her symptoms abated, she remained disoriented, shaky, and forgetful. (AR 374, 27.) The vocational expert testified at the hearing that someone with an RFC limited to simple, routine tasks who consistently missed work two times or more each month would be unemployable. (AR 65, 67.)

Taking this evidence at face value, at <u>minimum</u> Petitioner would be affected by

headache symptoms every three weeks, or one and one-half times each month. The ALJ's comments concerning Petitioner's symptom testimony concerned only headache frequency, not her symptoms. (AR 27, 30.) Yet, a headache that lasts anywhere from four hours to several days, occurs one and one-half times each month, and which causes symptoms such as pain and blurred vision, would at minimum affect Petitioner's attendance. Indeed, Petitioner testified that her work attempts ended in termination of her employment in part due to absenteeism caused by migraine symptoms. No consideration to this evidence is contained in the ALJ's discussion of Petitioner's symptom testimony.

Last, the ALJ's reference to Petitioner's reported physical activities do not supply the Court with any further insight into the ALJ's reasoning. (AR 30.) The ALJ noted that Petitioner was independent in all activities of daily living, could walk up to four miles a day, and reported playing Frisbee golf. (AR 30.) However, the ALJ did not explain how these activities contradict Petitioner's reports of frequent migraine headaches accompanied by pain, nausea, vomiting, blurred and double vision. The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities undermine her subjective symptom testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Petitioner testified that, when she is suffering a migraine, she is unable to engage in any activity – indeed, she stated in both headache questionnaires that headache symptoms required her to lie in bed with the lights off until symptoms abate. (AR 352, 374.) Presumably, when Petitioner is not experiencing a migraine, she would be able to perform activities of daily living and engage in physical activity. Notably, Petitioner does

not challenge the ALJ's RFC finding that Petitioner could physically meet the demands of work at all exertional levels. (AR 24.) But, the ALJ failed to discuss how the intermittent nature of Petitioner's migraines conflicted with her daily activities on days when she was not experiencing a migraine. Nor does the ALJ's reasoning address the heart of the issue, which concerns absenteeism related to migraine headache symptoms.

Respondent's arguments attempting to shore up the ALJ's determination are unpersuasive, and most do not relate specifically to Petitioner's migraine condition.[11] For those that do, Respondent argues the record supports the ALJ's evaluation of Petitioner's symptom testimony based upon her inconsistent complaints about the frequency of her migraine headaches and evidence of improvement with treatment. But, Respondent does not explain how headaches occurring one and one-half times each month, and lasting for up to several days, substantiates a finding Petitioner can maintain full-time competitive employment in light of the vocational expert's testimony that consistent absences of two or more days each month would preclude all employment.

Next, Respondent contends that the record does not support Petitioner's testimony that she suffered eight to twelve migraines a month after starting Aimovig as of September 2020. Resp. Brief at 5. (Dkt. 14, citing AR 701, 650, 747, and 54.) However, a review of the records cited by Respondent does not substantiate their argument. At a telehealth visit on  September 14, 2020, Dr. Parker indicated Petitioner reported migraine headache frequency of fifteen days per month and no improvement with atenolol,

---

[11] Respondent addresses Petitioner's memory and concentration difficulties, vision, and daily activities without reference to Petitioner's migraine condition. Resp. Brief at 4. (Dkt. 14.)

sumatriptan, or topiramate. (AR 701.) His notation regarding Aimovig was that it "reduced headache intensity by about 50%," but said nothing about frequency. (AR 701.) An office visit to dermatologist Ryan Harris, M.D. on October 6, 2020, notes only that current medications include "Aimovig…subcutaneously 1 time per month." (AR 650.) Similarly, the referenced record dated November 6, 2020, notes only that Petitioner was prescribed Aimovig, with no mention regarding symptom improvement, frequency, or severity. (AR 747.) There are no medical records following Petitioner's resumption of Aimovig injections in late 2020 documenting that Petitioner's headache severity or frequency improved. Petitioner's function report, dated February 6, 2020, indicates she was experiencing headaches three to four times each week. (AR 374.) While she stated that Aimovig made her headaches less severe, Petitioner still described symptoms such as pain, nausea, vomiting, blurred and double vision, and disorientation requiring her to lie in bed. (AR 374.)

Respondent also cites to the ALJ's reference to Petitioner's ability to work as undermining her testimony, noting that she earned her highest-ever income in 2018. (AR 307.) But, the ALJ made only a passing reference to Petitioner's ability to work, and failed to mention this in his discussion of Petitioner's migraine headaches as a reason for discounting her subjective symptom testimony. (AR 30.) The Court is constrained to review the reasons the ALJ asserts. *SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001). Moreover, this reason fails to refute the evidence in the record regarding the effect of Petitioner's migraines on attendance. One can still earn income yet be terminated from employment due to poor

attendance or absences.

Based upon the above discussion, the Court finds the ALJ supplied neither clear nor convincing reasons supported by substantial evidence in the record as a whole to reject Petitioner's subjective symptom testimony regarding her migraine headaches.

**3.     Lay Witness Testimony**

Petitioner contends the ALJ erred by failing to discuss or consider lay witness statements by Petitioner's mother, sister, and boyfriend, without providing germane reasons. Pet.'s brief at 17. (Dkt. 10.) Respondent maintains that Petitioner failed to show prejudicial error, because the lay witness statements describe the same subjective complaints that the ALJ rejected when he considered Petitioner's subjective symptom testimony, and that the evidence is contradicted by the medical evidence. Resp.'s Brief at 15. (Dkt. 14.) The Court finds the ALJ erred as explained below.

**A.     Legal Standard**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c governs how an ALJ must evaluate evidence from medical sources, which includes a clarification on how an ALJ evaluates nonmedical lay testimony. *See* 20 C.F.R. § 404.1520c(d). Under the plain language of the regulations, the ALJ must consider lay witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence,"

including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R. §§ 404.1520c(d); 416.920c(d), specifies that the ALJ is not required to articulate how he or she considered evidence from nonmedical sources "using the requirements in subparagraphs (a) – (c)," applicable to evaluations of medical opinions.

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). When rejecting third party statements which are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used in rejecting the claimant's statement. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints). The ALJ may also discount lay witness testimony if it is "contradicted by more reliable medical evidence that the ALJ credited." *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012).

## B.    Lay Witness Statement

The record contains two written statements from Petitioner's mother, dated October 5, 2019 and November 16, 2020; a statement from Petitioner's sister, dated November 19, 2020; and a statement from her boyfriend, dated November 23, 2020. (AR

**MEMORANDUM DECISION AND ORDER  - 28**

335, 396, 398, 399.)[12] Petitioner's mother related that her daughter suffers from insomnia from headache pain for several days in a row. (AR 336.) She also stated that her daughter has been fired from each and every job held after Petitioner's first brain surgery in 2012. (AR 339, 342.) Petitioner's mother confirmed in her second statement that Petitioner was let go from all of the jobs she applied for following her craniotomy because she "misses work because of excruciating headaches." (AR 396.)

Petitioner's sister described witnessing Petitioner in "debilitating pain from headaches." (AR 398.) She described one instance where her sister "had been experiencing a migraine for upwards of 12 hours with no relief." (AR 398.) Her boyfriend similarly described Petitioner's migraine symptoms. He had witnessed her "throwing up for hours at a time laying on the bathroom floor unable to turn on lights or communicate….She gets [migraines] several times a month for about 3 or 4 days at a time, she can't get out of bed, talk, or function normally…and then she can't sleep for 3 or 4 days and then can remember nothing." (AR 399.)

C.    Analysis

The Court finds the ALJ erred by failing to analyze or assess the lay witness statements, and that the error was not harmless. First, while the ALJ summarized the three witnesses' statements, there was no analysis. All three statements corroborate Petitioner's testimony concerning the frequency and intensity of Petitioner's headaches. The statements are also consistent with the medical evidence of record documenting

---

[12] The lay witnesses provided insight into Petitioner's short term memory loss and other conditions. However, the Court confines its analysis to the witnesses' description of Petitioner's headaches and their effects.

Petitioner's diagnosis of migraine headaches, treatment history, and notations contained within the medical records concerning headache frequency and symptoms. The statements relate to Petitioner's ability to sustain full time employment, and corroborate Petitioner's testimony that she had been terminated from all work attempts after her brain surgery due to, among other reasons, absenteeism related to migraine headaches.

Respondent requests the Court disregard the ALJ's error as harmless, because the statements are consistent with Petitioner's own subjective complaints, which the ALJ rejected. However, the Court cannot adopt this characterization of the ALJ's error. First, the regulations clearly require the ALJ to address lay witness statements. *See Robert U. v. Kijakazi*, No. 3:20-CV-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022) (no provision of the new regulations unambiguously removes the ALJ's obligation to address lay witness testimony); SSR 16-3p (explaining that other sources may provide information from which inferences may be drawn about a claimant's symptoms, and that "we will consider any statements in the record" by non-medical sources and "will consider any personal observations of the individual....").

Second, where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, the Court "cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). In the present case, the Court cannot so conclude. As discussed above, the Court rejected the ALJ's reasons for discrediting Petitioner's testimony concerning the severity and limiting effects of her headache

condition, particularly as it relates to Petitioner's absenteeism. Further, if fully credited, the lay witness testimony supports a conclusion that Petitioner's headaches would not enable her to sustain full time competitive work due to excessive absenteeism. Accordingly, a reasonable ALJ could find this evidence precludes Petitioner from maintaining full time competitive employment at any exertional level given the ALJ's findings regarding Petitioner's cognitive limitations, which Petitioner did not challenge.

Respondent's alternative reason – that the medical evidence contradicts the lay witness testimony – was not articulated by the ALJ as a reason for rejecting the witnesses' statements. Above, the Court discussed that one solitary chart note in the entirety of the administrative record appears to contradict Petitioner's testimony concerning the effect of Aimovig injections upon her headaches. The Court did not find this evidence satisfies the substantial evidence standard. Further, the Court explained that, even if credited, this evidence would still substantiate Petitioner's claim of excessive absenteeism due to headaches occurring one and one-half times each month with symptoms that last anywhere from four hours to four days. Petitioner's testimony concerning the effects of her headaches is described by her boyfriend, who had witnessed Petitioner with migraine symptoms lasting for up to four days, as well as by her mother and sister.

Consequently, the Court finds the ALJ's failure to provide reasons for rejecting the lay testimony is not harmless. Because the ALJ failed to provide any reasons for rejecting competent lay witness testimony, and the Court concludes the error was not harmless, substantial evidence does not support the ALJ's determination that Petitioner can sustain

**MEMORANDUM DECISION AND ORDER - 31**

full-time competitive employment. Accordingly, remand is warranted on this issue.

## CONCLUSION

The decision whether to remand for further proceedings or to order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").

But, where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman*, 211 F.3d at 1179-80. Likewise, where the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. *Revels*, 874 F.3d at 668; *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81. Remand is also appropriate when the Secretary is in a better position than the Court to evaluate the evidence. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).

Here, the Court finds that remand for further administrative proceedings is appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). There are outstanding issues that must be

resolved before a determination of disability can be made. The ALJ did not sufficiently discuss and evaluate the evidence before concluyding that Petitioner's headache condition did not equal a listed impairment at step three. Remand for further administrative proceedings is therefore warranted to allow the ALJ to consider the evidence in the record and conduct an appropriate step three analysis in the first instance.

On remand, if the ALJ determines that Petitioner's impairments, or combination of impairments, meet or medically equal a listing, Petitioner is presumed disabled and benefits should be awarded. If the ALJ concludes the medical evidence is insufficient to raise a presumption of disability at step three, the ALJ should proceed to steps four and five of the sequential evaluation. The step three evaluation determining whether Petitioner's migraines medically equal a listing is dependent on the ALJ's proper evaluation of the relevant medical evidence, opinion testimony, Petitioner's subjective symptom statements, and lay witness testimony. On remand, the ALJ must therefore reconsider the medical opinion evidence and other evidence in the record, as well as Petitioner's symptom testimony and lay witness testimony, in light of the Court's decision.

**MEMORANDUM DECISION AND ORDER  - 33**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

1.      The Petition for Review (Dkt. 1) is GRANTED.

2.      This matter is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

3.      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 26, 2022

Honorable Candy W. Dale
United States Magistrate Judge